**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **ROSA ACOSTA; BRENDA GEIGER; JANET GUZMAN; TIFFANY GRAY aka TIFFANY TOTH; and SANDRA VALENCIA,** | § | |
| ***Plaintiffs*****,** | § | **MO:25-CV-00307-DC-RCG** |
| **v.** | § | |
| **REYNA LUCIANO d/b/a CLUB 305,** | § | |
| ***Defendant*****.** | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

BEFORE THE COURT is Plaintiffs Rosa Acosta ("Plaintiff Acosta"), Brenda Geiger ("Plaintiff Geiger"), Janet Guzman ("Plaintiff Guzman"), Tiffany Gray ("Plaintiff Gray"), and Sandra Valencia's ("Plaintiff Valencia") (collectively, "Plaintiffs") Motion for Default Judgment against Defendant Reyna Luciano doing business as Club 305 ("Defendant Luciano") (Doc. 39) and its Supplemental Motion for the same. (Doc. 41).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Supplemental Motion for Default Judgment be **GRANTED** (Doc. 41) and Plaintiff's Motion for Default Judgment be **DENIED** as **MOOT** (Doc. 39).

## I. BACKGROUND

On July 10, 2025, Plaintiffs filed their Complaint against Defendant Millennium Entertainment Sports Bar, LLC ("Defendant Millennium") and Defendant Luciano (collectively, "Defendants") alleging five causes of action: (1) false association in violation of the Lanham

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Act; (2) false advertising in violation of the Lanham Act; (3) violation of Texas's right to privacy; (4) defamation; and (5) negligence. (Doc. 1). The relevant factual allegations are as follows.

Plaintiffs are all well-known professional models that earn their living licensing their images to companies, magazines, and individuals for the purpose of advertising products and services. (Doc. 1 at 3). Defendant Millenium operated Club 305, a nightclub located in Odessa, Texas. *Id.* at 1–2. Defendant Luciano is the owner/operator of Club 305 and is responsible for its advertising. *Id.* at 2. On September 19, 2019, Defendants posted an image of Plaintiff Acosta on their Instagram and Facebook accounts, intentionally altering it to make it appear she worked at, endorsed, or was otherwise affiliated with Club 305. (Docs. 1 at 5, 1-1 at 2–3). On January 18 and February 29, 2020, Defendants posted images of Plaintiff Geiger on their Instagram and Facebook accounts, intentionally altering it to make it appear she worked at, endorsed, or was otherwise affiliated with Club 305. (Docs. 1 at 5–6, 1-1 at 5–7). On September 2, September 24, October 21, 2022, and March 18, 2023, Defendants posted images of Plaintiff Guzman on their Instagram and Facebook accounts, intentionally altering it to make it appear she worked at, endorsed, or was otherwise affiliated with Club 305. (Docs. 1 at 6, 1-1 at 9–19). On June 18 and July 2, 2022, Defendants posted images of Plaintiff Gray on their Instagram and Facebook accounts, intentionally altering it to make it appear she worked at, endorsed, or was otherwise affiliated with Club 305. (Docs. 1 at 6–7, 1-1 at 21–25). On December 11, 2021, Defendants posted an image of Plaintiff Valencia on their Instagram and Facebook accounts, intentionally altering it to make it appear she worked at, endorsed, or was otherwise affiliated with Club 305. (Docs. 1 at 7, 1-1 at 27–29). Plaintiffs assert they have never been employed by, hired by,

associated or affiliated with, or paid by Defendants Millenium or Luciano nor Club 305. (Doc. 1 at 5–8).

Summons in this case were issued as to both Defendants on July 11, 2025. (Doc. 3). On October 27, 2025, Plaintiffs filed executed summons as to both Defendants. (Docs. 6, 7). Plaintiffs' proof of service shows Defendant Millenium was served by process server at 7016 Robbie Road, Odessa, Texas 79765, on July 18, 2025. (Doc. 6). Plaintiffs' proof of service shows Defendant Luciano was served by process server at 2315 West 49th Street Suite A, Odessa, Texas 79764. (Doc. 7). Both Defendants failed to file Answers or otherwise responsive pleadings, so the Court issued Show Cause Orders on both. (Docs. 8–9). On November 20, 2025, Defendant Luciano filed a Motion for Extension of Time to File a Response, which the Court granted. (Doc. 17). Defendant Luciano then filed another Motion for Extension of Time to File a Response on December 8, 2025. (Doc. 20). Defendant Luciano's Response was due on December 22, 2025. Since that date, Defendant Luciano has failed to answer Plaintiffs' Complaint or otherwise appear in this case. On April 2, 2026, Plaintiffs filed a Notice of Settlement and Stipulation of Dismissal as to Defendant Millenium, which the Court granted. (Docs. 29, 30, 36). The same day, Plaintiffs filed a Motion for Clerk's Entry of Default. (Doc. 32). On April 17, 2026, the Clerk of Court entered default against Defendant Luciano. (Doc. 37). On June 25, 2026, Plaintiff filed the instant Motion for Default Judgment, asking the Court to enter default as to liability only. (Doc. 39). After the Court informed Plaintiffs the Court would not enter default on liability alone, Plaintiffs filed a Supplemental Motion for Default Judgment. (Doc. 41).[2]

2. At the September 22, 2026, hearing, Plaintiffs clarified the Supplemental Motion for Default Judgment is meant to be an Amended Motion for Default Judgment, rendering the prior Motion moot. (Doc. 39).

Plaintiffs seek (1) actual damages against Defendant Luciano relating to their causes of action; (2) attorney fees; (3) prejudgment interest; (4) post-judgment interest; and (5) a permanent injunction against Defendant Luciano. (Doc. 41-4).[3] A hearing was held on the instant Motion for Default Judgment on September 22, 2026. (Doc. 42). Accordingly, this matter is now ripe for disposition.

## II. Legal Standard

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. Fed. R. Civ. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default

3. Plaintiffs' Proposed Order on Default Judgment includes costs and expert charges, while their Motion for Default Judgment states Plaintiffs are not moving for additional costs or expert fees. (Doc. 41 at 6). At the evidentiary hearing on September 22, 2026, Plaintiffs' counsel clarified Plaintiffs are not seeking costs or expert fees (Doc. 42).

> judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish her entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III. Discussion

Applying the three-part analysis detailed above, the Court finds Plaintiffs are entitled to a default judgment against Defendant Luciano.

### A. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds default judgment is procedurally warranted. First, Defendant Luciano has not filed any responsive pleadings or otherwise appeared in this case since December 8, 2025. (Doc. 20). Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Defendant Luciano's complete failure to respond since December 8, 2025, has brought the adversarial process to a halt, effectively prejudicing Plaintiffs' interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendant Luciano has not responded to the Complaint, the Court's Show Cause Order, the

Entry of Default, or Plaintiffs' Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant Luciano's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant Luciano has had over a year to respond to Plaintiffs' claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendant Luciano's inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant Luciano. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

**B. Default Judgment is Substantively Warranted and Plaintiff's Right to Relief**

Due to the entry of default, Defendant Luciano is deemed to have admitted the allegations outlined in Plaintiffs' Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiffs pleaded a sufficient basis for their claims to relief. *See id*. Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required,

> but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.*

In their Complaint, Plaintiffs plead five causes of action: (1) false association under the Lanham Act; (2) false advertising under the Lanham Act; (3) a violation of the Texas right to privacy;[4] (4) defamation; and (5) negligence and respondeat superior. (Doc. 1 at 10–19). However, in their Motion for Default Judgment, Plaintiffs seek recovery only on their Lanham Act and Texas common-law misappropriation claims, disposing of their remaining causes of action. (Doc. 41 at 3).

**1. Plaintiffs' Lanham Act Claims**

The provision of the Lanham Act that lays out the cause of action for false association states,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Similarly, in regard to false advertising, the section provides,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term,

4. Plaintiffs' Complaint styles this cause of action as a violation of the Texas right to privacy. (Doc. 1 at 14–16). The Court finds, in substance, Plaintiffs plead a cause of action for misappropriation. "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)).

> name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.* § (a)(1)(B). To bring a claim under either section, a plaintiff must plead five elements: (1) the defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, or likely to influence consumers' purchasing decision; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 333, 650–51 & n.11 (W.D. Tex. 2021) (citing *Pizza Hut, Inc v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (noting the *Pizza Hut* elements were recognized in a false designation of origin claim, but courts across the circuit consistently apply them to causes of action under both (a)(1)(A) and (a)(1)(B)).

Here, from 2019 to 2023, Defendant Luciano used altered images of Plaintiffs—who are in the business of commercializing their identity and selling their images to brands and companies for profit—to create the impression Plaintiffs worked at or endorsed Club 305 when they did not. (Docs. 1 at 10–14, 1-1). The images had the capacity to deceive a substantial segment of potential customers because it was done to promote and attract clientele to Defendant Luciano's establishment, and in fact succeeded in doing so. *Id.* As a result of Defendant's altered and unauthorized images, Plaintiffs suffered reputational and competitive injuries. (Doc. 1 at 10–14). Thus, Plaintiffs sufficiently plead a claim for false advertising and false association under the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(A), (B).

**2. Texas Common-Law Misappropriation**

While Plaintiffs name their cause of action a "Violation of Texas Right to Privacy," the Court will construe it as a claim of common-law misappropriation under state law. *See supra* note 4. The elements for misappropriation under Texas law are: (1) "the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose;" (2) "the plaintiff can be identified from the publication;" and (3) "there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994).

Here, Defendant Luciano used Plaintiffs' personal and professional images on their commercial social media platforms to promote Club 305. (Doc. 1 at 14–15). The images were not used incidentally or for a newsworthy purpose, and through the use of the images, Defendant Luciano commercially benefited. *Id.* Thus Plaintiffs stated a claim for common law misappropriation under Texas law.

**C. Plaintiffs' Right to Relief**

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On September 22, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of remedies. (Doc. 42). In their Motion for Default Judgment, Plaintiffs seek (1) actual damages against Defendant Luciano relating to their causes of action; (2) attorney fees; (3) prejudgment interest; (4) post-judgment interest; and (5) a permanent injunction against Defendant Luciano. (Doc. 41-4).

### 1. Compensatory Damages

A violation of either provision of Section 1125(a) entitles Plaintiffs to recover their actual damages subject to the principles of equity. 15 U.S.C. § 1117(a). Plaintiffs prove their damages through the unsworn declaration of Stephen Chamberlain, an expert in the "economics of image use, the valuation of image uses, model and public personality career valuation[,] and the effective rates of work and valuation." (Doc. 41-1). In preparing his declaration, Chamberlain reviewed and examined (1) the Complaint and all attached exhibits, including the Plaintiffs' images used by Defendants, "the product advertised, the usages, any alterations to the images, the media used, and the mode and scope of distribution in various markets;" (2) each Plaintiff's "earning history, development, growth, positioning, experience, current exposure, name recognition, personal publicity, social media profile, market demand, complimentary employment, and other factors determining and effecting earning capacity;" and (3) "the type and caliber of clients that have traditionally employed each" Plaintiff. *Id.* at 2–3. He testified,

> rates that models are paid are based upon numerous factors, including (a) a model's desirability, based on numerous factors, including the demand for her services; (b) a model's work history, such as prior associations, appearances, endorsements, or advertisements; (c) the nature of the business seeking a model's service, the type of product, whether exclusivity is sought, the embarrassment factor from being associated with the advertisement or marketing of certain products, or similar considerations; (d) the history of the business seeking a model's services, the style, quality and production of previous advertising and promotions, and its hiring of other models and celebrities; (e) exposure, namely how broadly the [m]odel's likeness will be circulated; (f) the type of exposure, or the "usage" of the image, such as advertising, social media, third party promotion, branding, coupon, extra usage, or corporate identity; (g) the length of exposure of usage, the period of use, and any renewals or rollovers; and (h) the nature, duration and location of the actual shoot and production.

*Id.* at 4. He "established a fair market fee for the use of each Plaintiff [m]odel's image taking into account the [m]odel's payment history, work quality, experience, exposure and duration of career, and then multiplied each image used by the number of separate types of usage." *Id.* at 5. Using this formula, Chamberlain calculated each Plaintiff's damages, which Plaintiffs provided the Court in a detailed chart in its Motion. *Id.* at 8–9.

| **Plaintiff** | **Calculation in Estimate** | **Total** |
|---|---|---|
| Rosa Acosta | $25,000 x 6 years | $150,000.00 |
| Brenda Geiger | 2 images x $10,000 x 5 years | $100,000.00 |
| Janet Guzman | 3 images x $25,000, plus 1 image x $25,000 x 2 years | $275,000.00 |
| Tiffany Gray aka Tiffany Toth | $20,000 x 3 years | $60,000.00 |
| Sandra Valencia | $10,000 x 3 years | $30,000.00 |
| **Total** | **Nine identified image entries** | **$615,000.00** |

(Doc. 41 at 4). Further, Plaintiffs presented evidence of its settlement with Defendant Millenium in the amount of $20,000. (Doc. 41-3 at 3). This amount is to be allocated proportionally to each Plaintiffs' individual damages as illustrated below.

| **Plaintiff** | **Original Award** | **Percentage of $615,000** | **Allocated $20,000 Settlement** | **Net Award** |
|---|---|---|---|---|
| Rosa Acosta | $150,000.00 | 24.39% | $4,878.05 | $145,121.95 |
| Brenda Geiger | $100,000.00 | 16.26% | $4,252.03 | $96,747.97 |
| Janet Guzman | $275,000.00 | 44.72% | $8,943.09 | $266,056.91 |
| Tiffany Gray aka Tiffany Toth | $60,000.00 | 9.76% | $1,951.22 | $58,048.78 |
| Sandra Valencia | $30,000.00 | 4.88% | $975.61 | $29,024.39 |
| **Total** | **$615,000.00** | **100%** | **$20,000.00** | **$595,000.00** |

(Doc. 41-4 at 2). Finding the necessary facts established to award damages, a judgment of $595,000.00 should be entered against Defendant Luciano. *See United Artists Corp.*, 605 F.2d at 857.

### 2. Attorney Fees

The Court may award reasonable attorney fees in exceptional cases. 15 U.S.C. § 1117(a). In the Fifth Circuit, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). District courts exercise this discretion on a case-by-case basis, considering the totality of the circumstances. *Id.* (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014)). Here, considering Defendant Luciano's deliberate alteration and unauthorized use of Plaintiffs' images despite knowledge Plaintiffs had no affiliation with Club 305, coupled with Defendant Luciano's failure to file anything after being granted two extensions (*see* Docs. 17, 20), the Court finds this is an exceptional case. Accordingly, Plaintiffs are entitled to their reasonable attorney fees.

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id.* at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.*; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Off. of*

*Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County*, 16 F.3d 1214 (5th Cir. 1994)).

Attached to Plaintiffs' Motion for Default Judgment, Plaintiffs' counsel, Mr. Dennis C. Postiglione provided a Declaration in Support of Attorney Fees, which indicates the 21.9 hours spent litigating this case are well grounded and justified. (Doc. 41-3 at 1–2). According to the time records submitted, Mr. Postiglione performed 21.9 hours at an hourly rate of $375. *Id.* at 2. Having reviewed Mr. Postiglione's declaration, the Court finds this hourly rate is reasonable for an attorney practicing in Mr. Postiglione's field with comparable experience to him. *Id.* Thus, Plaintiffs should be awarded $8,212.50 in reasonable attorney fees from Defendant Luciano.

### 3. Prejudgment Interest

Plaintiffs request interest at a rate allowed for by law to have accrued on the date of filing—July 10, 2025. (Doc. 41 at 6). Section 1117(a) does not explicitly provide for

prejudgment interest, but courts do have discretion to award prejudgment interest in appropriate cases. 15 U.S.C. § 1117(a). *See Clearline Techs, Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 712–13 (S.D. Tex. 2013). However, any amount awarded must "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). The Court finds awarding prejudgment interest would compensate Plaintiffs, not penalize Defendant Luciano. Thus, Plaintiffs should be awarded prejudgment interest at a rate allowed for by law, which began to accrue on July 10, 2025.

**4. Post-Judgment Interest**

In their Motion for Default Judgment, Plaintiffs also request post-judgment interest at the legal rate until paid in full. (Doc. 26-6 at 3). "The issue of post-judgment interest on a judgment entered in federal court is governed by federal law." *Lohr v. Gilman*, No. 15-CV-1931, 2018 WL 6199290, at *11 (N.D. Tex. Nov. 28, 2018) (citing *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594–95 (5th Cir. 2006)); *First Horizon Home Loans v. Sec. Mort. Corp.*, No. 09-CV-2182, 2010 WL 3659908, at *2 (N.D. Tex. Sep. 16, 2010) (citing *Bos. Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002)) ("Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest."). The pertinent statute, 28 U.S.C. § 1961, provides, "'interest shall be allowed on any money judgment in a civil case recovered in a district court,' and such 'interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Lohr*, 2018 WL 6199290, at *11 (citing 28 U.S.C. § 1961(a)). Therefore, Plaintiff is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

**5. Permanent Injunction**

Plaintiffs request a permanent injunction, enjoining Defendant Luciano from,

> (a) Using, publishing, displaying, distributing, or authorizing the use of the name, photograph, likeness, or identifiable depiction of Rosa Acosta, Brenda Geiger, Janet Guzman, Tiffany Gray a/k/a Tiffany Toth, or Sandra Valencia in advertising or promotion of Club 305, its events, or its goods or services, without the prior written authorization of the affected Plaintiff; and (b) Falsely representing in Club 305 advertising or promotional communications that any named Plaintiff is employed by, appears at, sponsors, endorses, or is otherwise commercially affiliated with Club 305.

(Doc. 41-4 at 4–5). Courts have the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a) . . . of section 1125." 15 U.S.C. § 1116 (a). For the Court to grant this relief, the Plaintiffs must demonstrate,

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . . ." *Id.* By failing to defend the case against her, Defendant Luciano failed to rebut the presumption of irreparable harm. Further, a permanent injunction would prevent Defendant Luciano and Club 305 from continuing to use Plaintiffs' images for advertisement. (Doc. 41 at 8). The balance of hardships weighs in favor of Plaintiffs, and it is in the public interest to halt and prevent false

advertisements. *See id.* Thus, Plaintiffs satisfied the four-factor test and should be awarded a permanent injunction against Defendant Luciano. *See eBay Inc.*, 547 U.S. at 391.

## IV. Recommendation

For the aforementioned reasons, **RECOMMENDS** Plaintiff's Supplemental Motion for Default Judgment be **GRANTED** (Doc. 41) and Plaintiff's Motion for Default Judgment be **DENIED** as **MOOT** (Doc. 39). Further, the Court **RECOMMENDS** a final judgment be entered against Defendant Luciano as follows:

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED**:

1. Default judgment is entered in favor of Rosa Acosta, Brenda Geiger, Janet Guzman, Tiffany Gray a/k/a Tiffany Toth, and Sandra Valencia and against Reyna Luciano d/b/a Club 305, individually, under Federal Rule of Civil Procedure 55(b)(2), on the claims for false association and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B), and Texas common-law misappropriation of name or likeness. The monetary award below is a single recovery for the proven injury and is not multiplied by the number of legal theories.
2. Plaintiffs recover the following damages from Reyna Luciano d/b/a Club 305:
    a. $595,000.00 in compensatory damages;
    b. $8,212.50 in reasonable attorney fees, representing 21.7 compensable hours at $375.00 per hour. No multiplier is applied. This is one collective fee award, not a separate award to each Plaintiff;
    c. Prejudgment interest at a rate allowed for by law, which began to accrue on July 10, 2025; and
    d. Post-judgment interest at a rate allowed for by law.

3. No judgment is entered against Millennium Entertainment Sports Bar, LLC.

4. Reyna Luciano d/b/a Club 305, and Defendant's officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with any of them who receive actual notice of this injunction by personal service or otherwise, are permanently **ENJOINED** from:

> (a) Using, publishing, displaying, distributing, or authorizing the use of the name, photograph, likeness, or identifiable depiction of Rosa Acosta, Brenda Geiger, Janet Guzman, Tiffany Gray a/k/a Tiffany Toth, or Sandra Valencia in advertising or promotion of Club 305, its events, or its goods or services, without the prior written authorization of the affected Plaintiff; and (b) Falsely representing in Club 305 advertising or promotional communications that any named Plaintiff is employed by, appears at, sponsors, endorses, or is otherwise commercially affiliated with Club 305.

Within **fourteen (14) days** after actual notice of this Judgment, Defendant Renya Luciano d/b/a/ Club 305 **SHALL REMOVE** from all websites, social-media accounts, and advertising channels under Defendant Luciano's possession or control all advertising or promotional material prohibited by this injunction and shall cease distributing prohibited printed advertisements. Defendant Luciano shall preserve one nonpublic copy of each removed advertisement for litigation and compliance purposes. This paragraph does not require alteration of material outside Defendant's control or prohibit truthful noncommercial reporting about this litigation.

The Court **FURTHER ORDERS** Plaintiffs to serve this Judgment on Defendant Reyna Luciano d/b/a Club 305 within **thirty (30) days of its signing** and file proof of service with the Court. Within **thirty days (30) after service of this injunction**, Defendant Reyna Luciano d/b/a Club 305 is **ORDERED** to file and serve a report under oath describing in detail the steps taken to comply, as authorized by 15 U.S.C. § 1116(a).

5. Claims against Millennium Entertainment Sports Bar, LLC were disposed of by settlement and dismissal. All claims against Reyna Luciano d/b/a Club 305 are disposed of by this Judgment. Any additional recovery under the alternative defamation, negligence, or respondeat superior theories, and any profits, enhanced damages, exemplary damages, or other relief not expressly awarded, is **DENIED** and **DISMISSED**. This Judgment does not alter the disposition or obligations of the settling defendant.
6. This is the Court's final judgment. The Court retains jurisdiction to enforce the injunction and Judgment and determine costs.

SIGNED this 5th day of October, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).